[No. S021168. July 31, 1992.]

CENTRAL PATHOLOGY SERVICE MEDICAL CLINIC, INC., et al.,
Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CONSTANCE HULL et al., Real Parties in Interest.

## COUNSEL

Bonne, Jones, Bridges, Mueller, O'Keefe, Kenneth N. Mueller, John Aitelli, John D. McCurdy, D. Scott Elliot, Greines, Martin, Stein & Richland, Kent L. Richland and Roxanne Huddleston for Petitioners.

Horvitz & Levy, S. Thomas Todd and David S. Ettinger as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

David M. Harney, Carl McMahan, Thomas Kallay, Esner & Marylander, Stuart B. Esner and Grant Marylander for Real Parties in Interest.

## OPINION

**LUCAS, C. J.**—Real parties in interest (plaintiffs) brought suit against petitioners (defendants) alleging claims based on negligent medical practices. Subsequently, plaintiffs were permitted to amend their complaint to add two causes of action based on intentional tort theories and to claim punitive damages for those intentional torts. The trial court (respondent) concluded Code of Civil Procedure section 425.13,[1] restricting prayers for punitive damages in actions "arising out of the professional negligence of a health care provider," did not apply to plaintiffs' punitive damages claims and granted plaintiffs' motion for leave to file a first amended complaint. Defendants sought review after the Court of Appeal summarily denied their petition for a writ of mandate to compel respondent court to vacate its order. We granted defendants' petition for review and issued an alternative writ of mandate. For the reasons stated herein, we conclude the trial court erred; we therefore remand this case to the Court of Appeal with directions to issue a peremptory writ of mandate directing the trial court to vacate its order granting plaintiffs' leave to amend their complaint and directing the trial court to conduct further proceedings in accordance with the views expressed herein.

---

[1] Further unspecified statutory references are to the Code of Civil Procedure.

## I. FACTS

In March 1990, plaintiffs Constance and Michael Hull filed a complaint for damages against multiple defendants including petitioners Central Pathology Service Medical Clinic, Inc., and Central Pathology Services Medical Group, Inc. (collectively Central Pathology), Elizabeth Irwin, M.D., and Elizabeth Irwin, M.D., Inc. (collectively Irwin). The complaint asserted causes of action for medical negligence and loss of consortium based on the failure of defendants to care for and treat Constance Hull.

In February 1991, approximately two months before the case was scheduled to be tried, plaintiffs moved for leave to file an amended complaint, seeking to add causes of action for fraud and intentional infliction of emotional distress. The new causes of action alleged that Irwin performed a pap smear on Constance, which was sent to Central Pathology for analysis. It was further alleged that despite the presence of abnormal cells, defendants failed to notify Constance that she was developing cancer; that Central Pathology, after being ordered to retest all persons tested in the past five years, intentionally failed to notify Constance that she should be retested; and that Irwin denied using Central Pathology in an effort to cover up her medical negligence. The cause of action for intentional infliction of emotional distress alleged that defendants acted in an outrageous manner with the intent to cause severe emotional distress. Plaintiffs sought punitive damages under the new causes of action.

Central Pathology opposed the motion to amend the complaint, asserting the proffered amendment failed to meet the requirements of section 425.13, subdivision (a) (section 425.13(a)), because the amendment was untimely and because plaintiffs would be unable to show there was a substantial probability they would prevail on their claims for punitive damages. Irwin likewise argued the motion was untimely. In response, plaintiffs contended that section 425.13(a) did not apply to the proposed amendments.[2]

The trial court agreed with plaintiffs and granted the motion to amend, stating section 425.13(a) was not "a bar to the fraud or intentional infliction [of emotional distress] cause[s] of action, and the punitive [damage] allegation against the health care provider." The court concluded that although section 425.13(a) applies to professional negligence causes of action, the causes of action alleged in the amended complaint did not relate to such negligence.

---

[2] Plaintiffs also argue on appeal that section 425.13(a) unconstitutionally impinges on their right to a jury trial on the issue of punitive damages and violates equal protection principles. Because plaintiffs did not advance these theories in the trial court or the Court of Appeal, we decline to address them here.

After the Court of Appeal summarily denied defendants' petition for a writ of mandate, we granted review and issued an alternative writ of mandate.

## II. DISCUSSION

### A. *Background*

Section 425.13(a) establishes a procedure for claiming punitive damages in certain cases. It provides, "*In any action for damages arising out of the professional negligence of a health care provider*, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code. . . ." (Italics added.)

The trial court relied on *Bommareddy* v. *Superior Court* (1990) 222 Cal.App.3d 1017 [272 Cal.Rptr. 246] to support its conclusion that section 425.13(a) is inapplicable when a plaintiff seeks punitive damages for intentional torts allegedly committed by health care providers. In *Bommareddy*, the defendant doctor sought a writ of mandate to compel the trial court to strike a claim for punitive damages that was based on a cause of action for medical battery, claiming the provisions of section 425.13 were applicable. (*Bommareddy, supra*, 222 Cal.App.3d at p. 1018.) In rejecting the doctor's claim, the court concluded, " '[p]rofessional negligence' as used in . . . section 425.13[(a)] is a term of art that does not include intentional torts . . . even when occurring during the provision of medical services." (*Id.* at p. 1024.) The court based this conclusion on its view of the legislative history of section 425.13(a) and its determination that limiting the application of section 425.13(a) to professional negligence of a health care provider would not render the statute meaningless. (*Bommareddy, supra*, 222 Cal.App.3d at p. 1021.) Defendants argue that the reasoning of *Bommareddy* is flawed and should be disapproved. We agree.

### B. *Statutory Language*

In determining the meaning of a statute, we are guided by the following principles: " '[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute

themselves, giving to the language its usual, ordinary import . . . . The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. . . . [Citations.]' " (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268 [284 Cal.Rptr. 718, 814 P.2d 704].)

■ We must construe the first sentence of section 425.13(a). It provides that the statute applies to "any action for damages arising out of the professional negligence of a health care provider . . . ." We will consider the meaning of the critical words "professional negligence" and "arising out of" as used in section 425.13(a).

"Professional negligence" is no stranger to statutory definition. In 1975, the Legislature passed the Medical Injury Compensation Reform Act (MICRA) containing no fewer than six sections defining "professional negligence" as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (§§ 364, subd. (f)(2), 667.7, subd. (e)(4), 1295, subd. (g)(2); Bus. & Prof. Code, § 6146, subd. (c)(3); Civ. Code, §§ 3333.1, subd. (c)(2), 3333.2, subd. (c)(2).) Although the Legislature did not repeat that definition in section 425.13, we must presume that the Legislature was familiar with existing statutory definitions. (*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394].) Therefore, we find that the existing definition was intended to apply to section 425.13.

Next we turn to the meaning of "arising out of" as used in section 425.13(a). Although "arising out of" is not defined in section 425.13 or the MICRA statutes,[3] other cases have defined the term. " 'The phrase "arising out of" is equated with origination, growth or flow from the event.' [Citations.]" (*Hartford Accident & Indem. Co.* v. *Civil Service Employees Ins. Co.*

---

[3] We note that MICRA statutes generally apply to actions "based upon" professional negligence. (See, e.g., Civ. Code, §§ 3333.1 & 3333.2, and Code Civ., Proc. § 364.) We agree with amici curiae California Medical Association et al. that committee reports before the Legislature at the time it was considering amending section 425.13 indicate the Legislature did not intend to distinguish the terms "based upon" and "arising out of." The reports state, "There is substantial precedent for [the amendment]. The provisions of [MICRA] all pertain

(1973) 33 Cal.App.3d 26, 32 [108 Cal.Rptr. 737]; see also *Palmer* v. *Agee* (1978) 87 Cal.App.3d 377, 386 [150 Cal.Rptr. 841] ["arise" means to originate from specified source or to come into being].) We have held that intentional tort causes of action can "arise out of" contractual relationships. (*Stout* v. *Turney* (1978) 22 Cal.3d 718, 730 [150 Cal.Rptr. 637, 586 P.2d 1228]; *Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491, 497 [131 Cal.Rptr. 374, 551 P.2d 1206].) However, whether intentional tort causes of action can "arise out of" professional negligence has not been addressed. In the context of section 425.13(a) it is unclear whether the intentional tort causes of action in this case may be said to originate, grow, or flow from "professional negligence." This uncertainty is not clarified by the words of the statute and we therefore turn to its legislative history. (*Walnut Creek Manor* v. *Fair Employment & Housing Com.*, *supra*, 54 Cal.3d at p. 268.)

## C. *Legislative History*

The legislative history of section 425.13(a) undermines the *Bommareddy* court's conclusion that section 425.13(a) is limited to causes of action alleging professional negligence.

### 1. *The Brown-Lockyer Civil Liabilities Reform Act*

In 1987, the Legislature enacted the Brown-Lockyer Civil Liability Reform Act (the Act). (Stats. 1987, ch. 1498, §§ 1-7, pp. 5777-5782.) One section of the Act amended Civil Code provisions governing exemplary damages in general. The Act increased the evidentiary threshold that must be met to recover punitive damages to *clear and convincing evidence* of oppression, fraud, or malice. The definition of malice was changed to include "*despicable* conduct" done "with a *willful* and conscious disregard of the rights or safety of others." (*Id.*, § 5, p. 5780, italics added.)

Another section of the Act added section 425.13 to the Code of Civil Procedure. As originally enacted, the section was not limited to medical malpractice. The statute provided, "No claim for punitive damages against a health care provider shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed." (Stats. 1987, ch. 1498, § 7, p. 5782.) The

---

to claims of 'professional negligence.' [Citations.]" (Assem. Subcom. on the Administration of Justice, Analysis of Sen. Bill No. 1420 (1987-1988 Reg. Sess.); Sen. Office of Research, 3d reading analysis of Sen. Bill No. 1420 (1987-1988 Reg. Sess.) as amended Apr. 14, 1988; Assem. Office of Research, Sen. 3d reading analysis of Sen. Bill No. 1420 (1987-1988 Reg. Sess.) as amended Aug. 30, 1988.)

next year the Legislature amended the section by incorporating former section 425.13 into new subdivision (a) of that section and by altering the first sentence to read, "*In any action for damages arising out of the professional negligence of a health care provider*, no claim for punitive damages shall be included . . . ." (Stats. 1988, ch. 1205, § 1, p. 4028, italics added.) The Legislature further stated that this amendment was declaratory of existing law. (*Id.*, § 6, p. 4032.)

The comments of the Assembly Subcommittee on the Administration of Justice regarding the foregoing amendment indicate the Legislature was concerned that the original version of section 425.13 was overbroad. The comment provides: "Code of Civil Procedure section 425.13 was enacted last year as part of SB 241 (Lockyer). This bill is intended to correct an oversight. As written, Section 4215.13 [*sic*] could apply to any lawsuit against any health care provider. . . . *Arguably, this could include lawsuits unrelated to the practitioner's practice, such as defamation, fraud, and intentional torts.* [¶] The author [of the original version of section 425.13] asserts that the intention . . . was to provide protection to health practitioners *in their capacity as practitioners.* Specifically, relief was sought from unsubstantiated claims of punitive damages in actions alleging professional negligence. There was no intent to protect practitioners in any other capacity. [The amendment] limits the application of Section [425.13(a)] to *lawsuits involving allegations of a health practitioner's 'professional negligence.'* " (Assem. Subcom. on the Administration of Justice Rep. on Sen. Bill No. 1420, p. 1 (1987-1988 Reg. Sess.), italics added; second italics was bold-faced in original.)

The Act was designed to address two problems. First, the Legislature sought in all cases to require greater certainty of the propriety of imposing punitive damages by requiring clear and convincing evidence of fraud, malice, or oppression and by modifying the definition of malice to include despicable, willful conduct.

Second, because it was concerned that unsubstantiated claims for punitive damages were being included in complaints against health care providers, the Legislature sought to provide additional protection by establishing a pretrial hearing mechanism by which the court would determine whether an action for punitive damages could proceed. The Legislature expressed no intent to extend the protection of the original version of section 425.13 to actions unrelated to the practice of a health practitioner. Because this limitation was not immediately apparent from the statute, the Legislature amended the section to specify that it applied only when the "action for

damages aris[es] out of the professional negligence of a health care provider." (§ 425.13(a).)

The Assembly subcommittee's comment emphasizes that lawsuits *unrelated* to a practitioner's conduct in providing health care related services were intended to be excluded from the ambit of section 425.13. Plaintiffs contend that the inclusion of the term "intentional torts" in the list of lawsuits assumed to be unrelated to the practitioner's practice demonstrates that the Legislature intended to exclude all intentional torts from the requirements of section 425.13. From our review of the history of the statute, however, we conclude that the reference to "intentional torts" by the author of the comments does not belie its statement of the essential purpose of the amendment—to restrict the application of section 425.13 to lawsuits brought against health practitioners "in their capacity as practitioners."

## 2. *Bommareddy v. Superior Court*

The *Bommareddy* court's interpretation of section 425.13(a) undermines the Legislature's intent to protect health care providers from unsubstantiated punitive damage claims. The court concluded that limiting the application of section 425.13(a) to causes of action for professional negligence would not render the section meaningless. It reasoned that "punitive damages may be awarded on what is traditionally considered a negligence cause of action if the conduct amounts to despicable conduct carried on with conscious disregard of the safety of others." (*Bommareddy* v. *Superior Court, supra,* 222 Cal.App.3d 1017, 1021.)

The decision in *Bommareddy* rested, in part, on the comment by the Senate Committee on the Judiciary that stated, " 'There is substantial precedent for this bill. The provisions of the Medical Injury Compensation Reform Act of 1975 (MICRA) all pertain to claims of "professional negligence." ' " (*Bommareddy* v. *Superior Court, supra,* 222 Cal.App.3d at p. 1023.) The court deduced that "as used in . . . section 425.13[(a)], 'professional negligence' is the same term of art as appears in the precedent MICRA legislation; there, the term has a specific meaning which does not include [an intentional tort] upon a patient." (*Bommareddy, supra,* 222 Cal.App.3d at p. 1023.) As we explain, we disagree with the *Bommareddy* court's analysis.

First, the *Bommareddy* court's reliance on legislative history analogizing MICRA statutes to section 425.13 is misplaced. The analysis erroneously focused on the relationship between professional negligence and intentional torts and held that the actions at issue were not subject to section 425.13.

Whether professional negligence, as defined in MICRA statutes, *includes* intentional torts is not the question. Rather, the trial court must determine whether a plaintiff's action for damages is one *"arising out of* the professional negligence of a health care provider." (§ 425.13(a), italics added.) Based on the language of the statute and its legislative history, we conclude that an action for damages arises out of the professional negligence of a health care provider if the injury for which damages are sought is directly related to the professional services provided by the health care provider.

Second, the *Bommareddy* interpretation of the legislative history leads to an anomalous result. ■ "In construing legislative intent, it is fundamental that a statute should not be interpreted in a manner that would lead to absurd results." (*People* v. *Morris* (1988) 46 Cal.3d 1, 15 [249 Cal.Rptr. 119, 756 P.2d 843].) If we were to accept the *Bommareddy* court's interpretation of 425.13(a), the section's protections would apply only to "nonintentional tort" conduct that gives rise to punitive damages. There are, however, few situations in which claims for punitive damages are predicated on mere negligence or a conscious disregard of the rights or safety of others and in which no intentional torts are alleged. (See, e.g., *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890 [157 Cal.Rptr. 693, 598 P.2d 854].) ■ An interpretation of the statute that would restrict its applicability to such a limited category of cases is inconsistent with the intention of the Legislature to protect health care providers from frequently pleaded and frivolous punitive damage claims. Contrary to the court's holding in *Bommareddy* v. *Superior Court, supra*, 222 Cal.App.3d 1017, such an interpretation would render the statute virtually meaningless.

Moreover, under the *Bommareddy* court's reading of section 425.13(a), injured patients seeking punitive damages in an action involving professional negligence could readily assert that their health care providers committed an intentional tort and that the patients seek punitive damages only in connection with the intentional tort. By including a cause of action for an intentional tort in a negligence action, plaintiffs would sidestep section 425.13(a) and the resulting procedural requirements the Legislature sought to impose on them. Thus, the *Bommareddy* court's interpretation of section 425.13(a) effectively permits artful pleading to annul the protection afforded by that section.

In sum, we conclude the Court of Appeal erred in *Bommareddy, supra*, 222 Cal.App.3d 1017, and accordingly we disapprove that case. We hold that whenever an injured party seeks punitive damages for an injury that is directly related to the professional services provided by a health care provider acting in its capacity as such, then the action is one "arising out of the

professional negligence of a health care provider," and the party must comply with section 425.13(a).

## D. *The Scope of Section 425.13*

We recognize that in the medical malpractice context, there may be considerable overlap of intentional and negligent causes of action. Because acts supporting a negligence cause of action might also support a cause of action for an intentional tort, we have not limited application of MICRA provisions to causes of action that are based solely on a "negligent act or omission" as provided in these statutes. To ensure that the legislative intent underlying MICRA is implemented, we have recognized that the scope of conduct afforded protection under MICRA provisions (actions "based on professional negligence") must be determined after consideration of the purpose underlying each of the individual statutes. (See, e.g. *Waters* v. *Bourhis* (1985) 40 Cal.3d 424, 435-436 [220 Cal.Rptr. 666, 709 P.2d 469]; see also *Hedlund* v. *Superior Court* (1983) 34 Cal.3d 695, 703-704 [192 Cal.Rptr. 805, 669 P.2d 41, 41 A.L.R.4th 1063] ].) Absent any indication that the Legislature intended otherwise in using the term "arising out of professional negligence" in section 425.13, we must do the same here.

As discussed above, identifying a cause of action as an "intentional tort" as opposed to "negligence" does not itself remove the claim from the requirements of section 425.13(a). The allegations that identify the nature and cause of a plaintiff's injury must be examined to determine whether each is directly related to the manner in which professional services were provided. ■ Thus, a cause of action against a health care provider for battery predicated on treatment exceeding or different from that to which a plaintiff consented is governed by section 425.13 because the injury arose out of the manner in which professional services are provided. By contrast, a cause of action against a health care provider for sexual battery would not, in most instances, fall within the statute because the defendant's conduct would not be directly related to the manner in which professional services were rendered. (Cf. *Waters* v. *Bourhis, supra,* 40 Cal.3d at p. 424.) And, contrary to plaintiffs' argument, section 425.13(a) applies regardless of whether the complaint purports to state a single cause of action for an intentional tort or also states a cause of action for professional negligence. The clear intent of the Legislature is that any claim for punitive damages in an action against a health care provider be subject to the statute if the injury that is the basis for the claim was caused by conduct that was directly related to the rendition of professional services.

■ Plaintiffs' cause of action for fraud in this case is directly related to the manner in which defendants provided professional services. The claim

emanates from the manner in which defendants performed and communicated the results of medical tests, a matter that is an ordinary and usual part of medical professional services. It is therefore governed by section 425.13(a). Plaintiffs' cause of action for intentional infliction of emotional distress is predicated on the same alleged acts as the fraud claim. Therefore, it too is directly related to defendants' performance of professional services and is governed by section 425.13(a).

## III. CONCLUSION

We conclude the Court of Appeal erred in summarily denying defendants' petition for a writ of mandate. Accordingly, the alternative writ of mandate is discharged, and the matter is remanded to the Court of Appeal with directions to issue a peremptory writ of mandate directing the trial court to vacate its order granting plaintiffs leave to amend their complaint and directing the trial court to conduct further proceedings in accordance with the views expressed herein.

Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

MOSK, J., Concurring and Dissenting.—I concur in the result. However, the majority paint with much too broad a brush in their apparent desire to eliminate any possibility of punitive damages against a medical provider, no matter how egregious the conduct.

The conclusion that section 425.13 of the Code of Civil Procedure applies to an action for battery "predicated on treatment exceeding or different from that to which a plaintiff consented" (maj. opn., *ante*, p. 192) cannot withstand scrutiny. For example, the majority would require a plaintiff to comply with the section if she consents to a mere exploratory procedure, but without her knowledge or consent and in the absence of an emergency the doctor performs a hysterectomy—thus permanently depriving her of reproductive ability. (See *Hundley* v. *St. Francis Hospital* (1958) 161 Cal.App.2d 800, 806 [327 P.2d 131, 80 A.L.R.2d 360].) Such a legal result would be indefensible.

A medical provider's right to examine, touch, palpate or excise any part of a person's body depends entirely on the patient's consent, with the exception of treatment required in an emergency. If a part of a patient's body is removed without consent, there can be no question that a common law battery has been committed. A battery gives rise to an action for compensatory and possible punitive damages. A plaintiff should not be required to beg the court's permission to seek any or all of those damages merely because the battery arises out of medical services provided by the defendant when the services were neither sought nor desired.

The approach taken by the majority is legally restrictive and morally callous. However, since I agree with the result under the facts of this case, I concur.

The petition of real parties in interest for a rehearing was denied September 24, 1992. Mosk, J., was of the opinion that the petition should be granted.