[No. B107959. Second Dist., Div. Two. July 16, 1997.]

MARTIN A. COOPER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ROBYNE ROBERSON, Real Party in Interest.

COUNSEL

Rushfeldt, Shelley & Drake, Linda C. Miller, Christine T. Hoeffner and Dawn Cushman for Petitioner.

No appearance for Respondent.

Andrew M. Wyatt for Real Party in Interest.

OPINION

ZEBROWSKI, J.—This writ petition concerns the applicability of Code of Civil Procedure section 425.13 (hereafter section 425.13). Section 425.13 provides that in any case "arising out of" the "professional negligence" of a "health care provider," a plaintiff cannot unilaterally plead a claim for punitive damages. Instead, after the complaint is filed, a plaintiff who wishes to seek punitive damages must make a motion for leave to file an amended complaint advancing the punitive claim.

In this case, plaintiff sued a doctor but did not make a motion pursuant to section 425.13. Instead she simply filed her punitive claim. The defendant doctor moved to strike the punitive allegations for failure to comply with section 425.13. The trial court denied the motion, ruling that section 425.13 does not apply to the type of allegations advanced by plaintiff. The defendant doctor then filed this writ petition.

Plaintiff's complaint advances nine theories, but the gravamen of each is the allegation that the defendant doctor, in the course of rendering gynecological services, committed a sexual battery by touching and manipulating plaintiff's genitalia. The question is whether section 425.13 does, or does

not, apply to this type of allegation. We find that it does, and hence will issue the requested writ directing that the punitive claim be stricken, with the proviso that the order striking the punitive claim shall be without prejudice to a properly noticed and supported motion pursuant to section 425.13.

## I.  PLAINTIFF'S COMPLAINT

We have no facts to relate, but only allegations. The distinction between facts and allegations is an important one, for it is this distinction that the Legislature had in mind when it enacted section 425.13 as part of the Willie L. Brown, Jr.-Bill Lockyer Civil Liability Reform Act of 1987. (Stats. 1987, ch. 1498, §§ 1-7, pp. 5777-5782.)

Plaintiff's complaint alleges the following: Defendant is a male doctor. Plaintiff is female. Plaintiff came to defendant doctor's office for removal and replacement of an intrauterine device (hereafter IUD). Upon seeing plaintiff, defendant doctor "made reference" to her as a "pretty girl." In the examination room, defendant doctor "told her to take her pants off" but "did not leave the room." After plaintiff told defendant doctor "that she would not undress with him in the room," defendant doctor left the room. Plaintiff then "undressed from the waist down and sat on the examining table." Defendant doctor then returned to the room, told plaintiff "to put her legs in the stirrups," and "rolled his stool over to the end of the table between [plaintiff's] legs." Defendant doctor then "started to remove the old IUD without scrubbing his hands or putting on gloves." Plaintiff asked defendant doctor "if he was going to put on gloves," and defendant doctor "responded that he did not put much credence in the need for hygiene." However, defendant doctor asked plaintiff "if she wanted him to put on gloves." She said she did. Defendant doctor then "instructed the nurse to bring him gloves." Defendant doctor "then removed the old IUD." Plaintiff "was expecting to feel the coldness of the antiseptic, but did not." Plaintiff was "aware" that in the past "antiseptic was used prior to the insertion of the IUD," but "[i]n this case, the IUD was inserted without any antiseptic being used." After the nurse left the room, defendant doctor told plaintiff "that he was going to give her a pelvic examination." Defendant doctor then "placed his hand on [plaintiff's] vagina, rubbing his fingers over [plaintiff's] clitoris as he was going to examine her internally." While defendant doctor "was doing this, he was standing at the end of the table and staring into [plaintiff's] eyes." Defendant doctor "immediately stopped" when the nurse returned to the room. After the nurse again left, defendant doctor asked plaintiff "if she was all right." Plaintiff then told defendant doctor "that she had never met a doctor like him before." Defendant doctor "then put his hands on [plaintiff's] shoulders and began massaging them." Defendant doctor "admitted" that "he should take

the cleanliness issue more seriously but doesn't." Defendant doctor told plaintiff "that she was right for making him wear the gloves, but he assured her that he did not have any communicable diseases." Defendant doctor grabbed plaintiff's left hand "and directed it to his mouth to kiss it," but plaintiff pulled her hand away. Again, however, defendant doctor grabbed plaintiff's hand, "taking it to his mouth and kissing it." Defendant doctor then asked plaintiff "not to turn him in." After the nurse returned to the room, defendant doctor left the room. Plaintiff then "got dressed as fast as she could and ran out of the office." Four days later, defendant doctor phoned plaintiff, but plaintiff "was too frightened to return his call." The nature of any inquiries made or messages left by defendant doctor is not stated in the complaint.

Based on these allegations, plaintiff pleaded these nine theories against defendant doctor: 1) sexual harassment, 2) sexual discrimination, 3) "bias related violence or intimidation," 4) sexual assault, 5) sexual battery, 6) false imprisonment, 7) intentional infliction of emotional distress, 8) negligent infliction of emotional distress, and 9) medical malpractice. She alleged that she "has suffered severe emotional injuries, which include, nightmares of being raped, insomnia, reduced desire for sexual activity, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort." Plaintiff's complaint sought both compensatory and punitive damages.

## II. THE REACH AND OPERATION OF SECTION 425.13

■ Section 425.13 was enacted because the Legislature "was concerned that unsubstantiated claims for punitive damages were being included in complaints against health care providers." (*Central Pathology Services Medical Clinic, Inc.* v. *Superior Court* (1992) 3 Cal.4th 181, 189 [10 Cal.Rptr.2d 208, 832 P.2d 924] (*Central Pathology*).) The Legislature therefore "sought to provide additional protection by establishing a pretrial hearing mechanism by which the court would determine whether an action for punitive damages could proceed." (*Id.* at p. 189.) This pretrial hearing mechanism must be used if plaintiff's claim is for damages "arising out of the professional negligence of a health care provider." (§ 425.13.) "[A]n action for damages arises out of the professional negligence of a health care provider if the injury for which damages are sought is *directly related* to the professional services provided by the health care provider." (*Central Pathology, supra,* at p. 191, italics added.) Thus if a claim is "directly related" to the professional services rendered by a health care provider, section 425.13 applies.

When section 425.13 does apply, "no claim for punitive damages shall be included in a complaint" unless a court order is first obtained on motion.

(§ 425.13, subd. (a).) The motion must be decided "on the basis of the supporting and opposing affidavits presented." (*Ibid.*) The court must find "that the plaintiff has established that there is a substantial probability that the plaintiff will prevail" on the punitive claim before leave is granted to file an amended pleading containing the punitive claim. (*Ibid.*)[1] The purpose of this evidentiary requirement is "to protect health care providers from the onerous burden of defending against meritless punitive damage claims." (*College Hospital, supra,* 8 Cal.4th 704, 709.)

██ The applicability of section 425.13 does not depend upon technical pleading distinctions between intentional versus negligent tort theories. "[I]dentifying a cause of action as an 'intentional tort' as opposed to 'negligence' does not itself remove the claim from the requirements" of section 425.13. (*Central Pathology, supra,* 3 Cal.4th 181, 192.) Instead, "[t]he allegations that identify the nature and cause of a plaintiff's injury must be examined to determine whether each is directly related to the manner in which professional services were provided." (*Id.* at p. 192). Thus a claim of battery "predicated on treatment exceeding or different from that to which a plaintiff consented is governed by section 425.13" (*id.* at p. 192), a claim of fraud in communication of test results is covered (*id.* at pp. 192-193), a claim of intentional infliction of emotional distress arising from the rendition of professional services is covered (*id.* at p. 193), a claim of falsification of medical findings and conspiracy to deprive a patient of workers' compensation benefits is covered (*Davis* v. *Superior Court* (1994) 27 Cal.App.4th 623 [33 Cal.Rptr.2d 6]), and a claim that a hospital allowed two hospital employees to rape a patient is covered (*United Western Medical Centers* v. *Superior Court, supra,* 42 Cal.App.4th 500, 504-505).

██ Here plaintiff was allegedly in an examination room, on an examination table during the most critical events, naked from the waist down, with her legs spread in stirrups, in the standard position for gynecological examination and treatment, for the purpose of such examination and treatment. Defendant was allegedly a doctor administering gynecological health care, and hence was a health care provider within the meaning of section 425.13. Plaintiff alleges that the doctor, in the course of his interaction with plaintiff under these circumstances, used incorrect medical procedures and engaged in improper sexual touching. These allegations are indisputably "directly related" to the rendition of health care. According to plaintiff's allegations,

---

[1]The proper application of this evidentiary standard is set forth in *College Hospital, Inc.* v. *Superior Court* (1994) 8 Cal.4th 704, 709 [34 Cal.Rptr.2d 898, 882 P.2d 894] (*College Hospital*) and *United Western Medical Centers* v. *Superior Court* (1996) 42 Cal.App.4th 500 [49 Cal.Rptr.2d 682]. The issue in the instant case is not the proper way to apply section 425.13, but instead whether it applies at all.

defendant doctor had access to plaintiff and the opportunity to make contact with her genitalia only because plaintiff came to him for medical care involving her genitalia.

In addition to the alleged sexual battery, plaintiff also alleges shoulder-rubbing and hand kissing. These actions might be considered boorish or lecherous by many, perhaps a style of old-world gallantry by others, and probably at least quixotic by most. Sober reflection might suggest that this type of "bedside manner" could be ill-advised in view of modern social and legal norms. Nevertheless, however ill-advised or offensive, the shoulder-rubbing and hand-kissing allegations were not the essence of the punitive claim. (Cf. Civ. Code, § 3294 ["malice," "despicable conduct," "cruel and unjust hardship," etc., required to support punitive damages].) As the trial court recognized, the punitive claim in this case depends squarely upon the allegation of sexual battery. While these alleged acts are clearly "directly related" to the rendition of gynecological services, there is a reason why a ponderable question was presented to the trial court and why we must now consider the issue here. That reason is a dictum appearing in the Supreme Court's opinion in *Central Pathology, supra,* 3 Cal.4th 181. Although the dictum is obviously correct as a factual matter, it has sometimes been misconstrued. To this we now turn.

### III. THE CENTRAL PATHOLOGY DICTUM

In discussing the reach of section 425.13, the *Central Pathology* court stated: "[I]dentifying a cause of action as an 'intentional tort' as opposed to 'negligence' does not itself remove the claim from the requirements of section 425.13(a). The allegations that identify the nature and cause of plaintiff's injury must be examined to determine whether each is directly related to the manner in which professional services were provided. Thus, a cause of action against a health care provider for battery predicated on treatment exceeding or different from that to which a plaintiff consented is governed by section 425.13 because the injury arose out of the manner in which professional services are provided. *By contrast, a cause of action against a health care provider for sexual battery would not, in most instances, fall within the statute because the defendant's conduct would not be directly related to the manner in which professional services were rendered.*" (*Central Pathology, supra,* 3 Cal.4th 181, 192, italics added.)

The italicized passage has generated mistaken trial court rulings and has resulted in appellate writs before. (See *United Western Medical Centers* v. *Superior Court, supra,* 42 Cal.App.4th 500.) Plaintiffs have argued, and some courts have agreed, that the italicized passage necessarily means that

no section 425.13 motion is ever needed when plaintiff pleads a claim of sexual battery. This is not the meaning of the point made about sexual battery in *Central Pathology.*

*Central Pathology* noted merely that "in most instances" a claim of sexual battery would not be related to the manner in which professional services are rendered. Clearly this is so. Most types of services rendered by health care providers do not involve the genitalia. Thus if a podiatrist, ophthalmologist or dentist touches or manipulates a patient's genitalia, there will usually be no arguable connection between such conduct and the rendition of legitimate health care. If a patient consults an orthopedic surgeon for treatment of bursitis in an elbow, there would usually be no occasion for the surgeon to touch or manipulate that patient's genitalia. A doctor consulted for nutritional advice about cholesterol levels would not likely have a legitimate medical reason for manipulating genitalia. The list of examples of this type is endless. A doctor rendering gynecological care, by contrast, cannot render the full panoply of gynecological services without touching, probing or otherwise manipulating a woman's genitalia. Thus when a gynecologist is accused, as here, of committing a sexual battery in the course of rendering gynecological services, that accusation is necessarily "directly related" to the manner in which the gynecological services were rendered.

A different construction of section 425.13 would de facto constitute a blanket exclusion of gynecological services from the protections of section 425.13. Such a construction would revert the gynecological branch of medicine back to the posture all branches of medicine were in before the Willie L. Brown, Jr.-Bill Lockyer Civil Liability Reform Act of 1987 was passed— plaintiffs would have *carte blanche* discretion to plead punitive damage claims against doctors rendering gynecological services whenever they wished, without prior judicial review, simply by characterizing the doctor's inevitable contact with the woman's genitalia as "sexual battery." In passing the Willie L. Brown, Jr.-Bill Lockyer Civil Liability Reform Act of 1987, the Legislature made a public policy judgment that it was not wise to allow plaintiffs complete freedom in pleading such punitive claims against doctors. The merits of that legislative decision are not subject to judicial review; the judicial function is simply to enforce the statute. There is no indication of a legislative intent that gynecological or other genitalia-related medical services be singled out for exclusion from the protections of section 425.13. Hence gynecological care is also covered.

Lest this decision be misunderstood or misconstrued by minds clouded with revulsion caused by plaintiff's allegations, it should be recognized that this ruling involves no decision regarding the propriety of whatever the

doctor did—whatever the evidence may ultimately prove that to be. We simply rule here that when improprieties of the sort claimed by plaintiff allegedly occur in the course of gynecological services, section 425.13 requires a motion for leave to amend supported by evidence before a claim for punitive damages may be pleaded.

## IV. DISPOSITION

Let a writ of mandate issue directing the trial court to vacate its order of November 21, 1996, denying petitioner's motion to strike real party's claim for punitive damages and to issue a new order striking all such claims, without prejudice to a properly noticed and supported motion pursuant to Code of Civil Procedure section 425.13. The parties to bear their own costs.

Boren, P. J., and Fukuto, J., concurred.