[No. B204061. Second Dist., Div. Seven. Apr. 23, 2008.]

LITTLE COMPANY OF MARY HOSPITAL et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
FRANCISCO MARIN, Real Party in Interest

262

COUNSEL

Fonda & Fraser, Peter M. Fonda, Daniel K. Dik and Cecille L. Hester for Petitioners.

No appearance for Respondent.

McNulty Law Firm, Peter J. McNulty and Brett L. Rosenthal for Real Party in Interest.

OPINION

PERLUSS, P. J.—

## INTRODUCTION

No claim for punitive damages may be made in any action against a religious corporation unless the trial court first concludes the plaintiff has evidence that "substantiates that [he or she] will meet the clear and convincing standard of proof" for punitive damages under Civil Code section 3294.[1] (Code Civ. Proc., § 425.14.)[2] A similar statute protects health care providers

---

[1] Civil Code section 3294 provides for the recovery of punitive damages in actions not arising from contract when "it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice . . . ."

[2] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

against claims for punitive damages in any action "arising out of [their] professional negligence" unless the trial court finds in a separate pretrial proceeding the plaintiff has established a "substantial probability" he or she will prevail on the claim. (§ 425.13, subd. (a).)

■ In *Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 777 [11 Cal.Rptr.3d 222, 86 P.3d 290] (*Covenant Care*) the Supreme Court held, because claims under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) (the Elder Abuse Act) are rooted in conduct far more egregious than professional medical negligence, section 425.13's prerequisites for filing a punitive damage claim do not apply in elder abuse cases. The pending petition for writ of mandate filed by Little Company of Mary Hospital and Little Company of Mary Subacute Care Center (collectively Little Company of Mary) questions whether the *Covenant Care* analysis applies in the related context of section 425.14: That is, although a plaintiff seeking punitive damages against a health care corporation for elder abuse is not subject to section 425.13, must the plaintiff nonetheless satisfy section 425.14's nearly identical requirement of proving a substantial probability of prevailing on the punitive damage claim when the defendant health care provider qualifies as a religious corporation?

■ The plain language of section 425.14, coupled with its legislative history, reflects an unmistakable intent to afford religious organizations protection against unsubstantiated punitive damage claims without regard to the conduct giving rise to the claim. In this way, section 425.14's protections are broader than those afforded secular health care providers by section 425.13. Because the trial court erred in concluding the pretrial mechanism provided in section 425.14 does not apply in elder abuse cases seeking exemplary damages against religious organizations, we grant the petition for writ of mandate and direct respondent Los Angeles Superior Court to vacate its order denying Little Company of Mary's motion to strike the punitive damage claim in the underlying action.

## FACTUAL AND PROCEDURAL BACKGROUND

Francisco Marin filed an action for elder abuse and wrongful death after his mother, Julia Gomez, died while in the care and custody of Little Company of Mary. Marin's complaint sought punitive damages in connection with the claim for elder abuse. Little Company of Mary, owned and operated by Providence Health System—Southern California, a tax-exempt religious corporation, moved to strike the punitive damage claim. Invoking the protections of section 425.14, Little Company of Mary argued Marin was precluded from seeking punitive damages unless, in a separate hearing, Marin demonstrated he could satisfy the standard of proof for punitive damages articulated

in Civil Code section 3294. In response Marin argued, under the holding and analysis of *Covenant Care, supra,* 32 Cal.4th 771, punitive damage claims for elder abuse are not subject to the requirement of a pretrial showing of merit.

Acknowledging that *Covenant Care, supra,* 32 Cal.4th 771, held section 425.13, not section 425.14, inapplicable in the context of elder abuse claims, the trial court nonetheless concluded the two sections had been enacted for the same general purpose—"to protect groups seen as socially beneficial from unwarranted claims for punitive damages"—and ruled the rationale articulated in *Covenant Care* to exclude elder-abuse-related punitive damage claims from the requirements of section 425.13 applied equally to claims against religious organizations. Accordingly, the trial court denied Little Company of Mary's motion to strike the elder-abuse-related punitive damage claim in Marin's action.

On November 30, 2007 Little Company of Mary petitioned this court for a writ of mandate compelling the trial court to vacate its order denying the motion to strike the punitive damage claim in Marin's first amended complaint and to enter a new order granting the motion. On December 7, 2007, after receiving an informal response from Marin, we issued an order to show cause why the relief requested should not be granted.

## DISCUSSION

### 1. *Standard of Review*

Whether section 425.14's pretrial requirements apply in elder abuse cases brought against religious organizations is a question of law subject to de novo review. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422 [101 Cal.Rptr.2d 200, 11 P.3d 956]; see *California Veterinary Medical Assn. v. City of West Hollywood* (2007) 152 Cal.App.4th 536, 546 [61 Cal.Rptr.3d 318].)

### 2. *Background of Sections 425.13 and 425.14*

#### a. *Section 425.13*

■ Section 425.13, subdivision (a) provides, "In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and

opposing affidavits presented that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code." In other words, the party seeking punitive damages must demonstrate the existence of sufficient evidence to establish a prima facie case for punitive damages in accordance with Civil Code section 3294's higher standard of proof by clear and convincing evidence. (See *Rowe v. Superior Court* (1993) 15 Cal.App.4th 1711, 1720–1721 [19 Cal.Rptr.2d 625].)

■ The history and purpose of section 425.13 was first addressed by the Supreme Court in *Central Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181 [10 Cal.Rptr.2d 208, 832 P.2d 924] (*Central Pathology*). When originally enacted in 1987, section 425.13 was not limited to professional malpractice. Rather, it broadly stated that no claim for punitive damages could be brought against a health care provider unless the court approved the claim upon a finding of substantial merit. (*Central Pathology*, at p. 188; see also Stats. 1987, ch. 1498, § 7, p. 5782.) The following year, the Legislature amended section 425.13 expressly to limit its applicability to punitive damage claims arising from a health care provider's professional negligence. (Stats. 1988, ch. 1205, § 1, p. 4028.) Examining the relevant legislative history, the Supreme Court explained the Legislature was concerned the original version of section 425.13 was overbroad and believed the amendment was necessary to correct an oversight. (*Central Pathology*, at p. 189.) Former section 425.13, as written, inadvertently applied to lawsuits unrelated to the practice of medicine such as defamation, fraud and certain intentional torts. Yet from the beginning the intent of section 425.13 was to " 'provide protection to health practitioners *in their capacity as practitioners.* . . . There was no intent to protect practitioners in any other capacity.' " (*Central Pathology*, at p. 189, quoting Assem. Subcom. on Admin. of Justice, Rep. on Sen. Bill No. 1420 (1987–1988 Reg. Sess.) p. 1.) The 1988 amendment to section 425.13 made clear a claim for punitive damages against a health care provider is subject to section 425.13 only "if the injury that is the basis for the claim was caused by conduct that was directly related to the rendition of professional services." (*Central Pathology*, at p. 192.)

■ Based on the language and legislative history of section 425.13, the Supreme Court in *Central Pathology, supra*, 3 Cal.4th 181, concluded the essential inquiry in determining whether section 425.13 applies is not the label of the claim, but the context in which the claim arises. Intentional torts such as some batteries, for example, may arise in the context of professional negligence; others, the court explained, may not. (*Central Pathology*, at p. 192.) In *Covenant Care, supra*, 32 Cal.4th 771, the Supreme Court considered whether claims for exemplary damages under the Elder Abuse Act arise out of the professional negligence of a health care provider and thus fall within the ambit of section 425.13. ■ After examining the language and

intent of both section 425.13 and the Elder Abuse Act, the court concluded claims for exemplary damages based on elder abuse were not subject to the requirements of section 425.13. As the court explained, "[N]othing in the text, legislative history, or purposes of either section 425.13(a) or the Elder Abuse Act . . . suggest[s] the Legislature intended to afford health care providers that act as elder custodians, and that egregiously abuse the elders in their custody, the special protections against exemplary damages they enjoy when accused of negligence in providing health care." (*Covenant Care*, at p. 776.)

### b. *Section 425.14*

Section 425.14 provides, "No claim for punitive or exemplary damages against a religious corporation or religious corporation sole shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive or exemplary damages to be filed. The court may allow the filing of an amended pleading claiming punitive or exemplary damages on a motion by the party seeking the amended pleading and upon a finding, on the basis of the supporting and opposing affidavits presented, that the plaintiff has established evidence which substantiates that plaintiff will meet the clear and convincing standard of proof under Section 3294 of the Civil Code."

Section 425.14 was intended to provide to religious institutions a pretrial mechanism to eliminate unsubstantiated punitive damage claims similar to that contained in section 425.13. (See Legis. Counsel's Digest, Sen. Bill No. 1 (1987–1988 Reg. Sess.) 4 Stats. 1988, Summary Dig., p. 489 ["Existing law provides that a claim for punitive damages may not be included in a complaint or other pleading against a health care provider unless allowed by the court, as specified. [¶] This bill would enact a similar provision with respect to a complaint or pleading against a religious corporation or a religious corporation sole."]; see also *Rowe v. Superior Court, supra,* 15 Cal.App.4th at pp. 1721, 1723, fn. 13 ["[t]he legislative history of section 425.14 demonstrates an intent on the part of the Legislature to impose a burden similar to that imposed by section 425.13" by erecting a " ' "pleading hurdle," namely, the requirement that some likelihood of success be demonstrated to the court as a condition of pleading punitive damages' " against a religious organization (italics omitted)].)[3]

---

[3] As originally proposed, the legislation was an amendment to Civil Code section 3294 and would have barred any recovery of punitive damages against charitable organizations, including religious corporations. (See Sen. Bill No. 1 (1987–1988 Reg. Sess.) as introduced Dec. 1, 1986.) The legislation was amended several times in committee, resulting in the substitution of

3. *Section 425.14 Applies to Claims for Punitive Damages Against Religious Health Care Providers Even in the Context of Elder Abuse Actions*

■ In addressing the intended meaning of section 425.14, we are guided by well-established principles of statutory construction. " ' "[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import . . . . The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." ' " (*Central Pathology, supra*, 3 Cal.4th at pp. 186–187; see *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 543 [67 Cal.Rptr.3d 330, 169 P.3d 559].)

■ Section 425.13 expressly applies only to actions "arising out of the professional negligence of a health care provider." It is limited both by the identity of the defendant and the nature of the plaintiff's claim. In contrast to the limiting language contained in section 425.13, nothing in the language of section 425.14 makes its applicability dependent on the conduct of the religious organization. By its terms, section 425.14's requirements must be satisfied whenever the defendant is a religious organization, regardless of the nature of the conduct giving rise to the plaintiff's claim. In this regard, section 425.14 is identical to section 425.13 before it was amended in 1988: That is, application of both former section 425.13 and current section 425.14 is based solely on the identity of the defendant, not the nature of the defendant's conduct.

The legislative history of section 425.14 reinforces that conclusion. Senate Bill No. 1 (1987–1988 Reg. Sess.) as amended August 26, 1988, adding section 425.14 to the Code of Civil Procedure, was finally approved by the Legislature on August 31, 1988 (Sen. Bill No. 1, approved by Governor, Sept. 26, 1988, Sen. Final Hist. (1987–1988 Reg. Sess.) p. 9)—the same day the Legislature adopted the amendment limiting the scope of section 425.13 to conduct arising from a health care provider's professional negligence. (Sen. Bill No. 1420, approved by Governor, Sept. 22, 1988, Sen. Final Hist.

the pleading hurdle for the original absolute bar against punitive damages and the replacement of "charitable organizations" with religious corporations. (See *Rowe v. Superior Court, supra*, 15 Cal.App.4th at p. 1721.)

(1987–1988 Reg. Sess.) p. 953.)[4] Thus, at the same time the Legislature took specific measures to restrict section 425.13's applicability to certain types of claims asserted against health care providers, it passed section 425.14 without any similar limiting language. These simultaneous actions strongly suggest the omission of limiting language in section 425.14 was intentional. (See, e.g., *Kelly v. Methodist Hospital of So. California* (2000) 22 Cal.4th 1108, 1121 [95 Cal.Rptr.2d 514, 997 P.2d 1169] [Legislature's elimination of other previously exempted employer categories without limiting exemption for religious entities reflects intent to maintain existing broad exemption from liability in favor of religious employers]; *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297] [provision in Gov. Code, § 970.1, subd. (b), that judgment against local public entity is not enforceable under tit. 9 of pt. 2 of Code Civ. Proc. applies to all of tit. 9; Legislature's amendment of other statutes to include specific references to particular portions of tit. 9 supports conclusion breadth of Gov. Code, § 970.1 was intentional]; see also *City of Ontario v. Superior Court* (1993) 12 Cal.App.4th 894, 902 [16 Cal.Rptr.2d 32] ["We must assume that the Legislature knew how to create an exception if it wished to do so . . . . It did not do so, and the State is now asking us to engage in the most extreme form of judicial rewriting of the statutes."].)[5]

■ Nothing in *Covenant Care, supra*, 32 Cal.4th 771, compels a different conclusion. As discussed, in *Covenant Care* the Supreme Court held section 425.13, specifically limited to claims arising from the professional negligence of a health care provider, does not encompass elder abuse claims, which are rooted in conduct far more egregious than medical malpractice. That conclusion, while based in part on the salutary policy of the Elder Abuse Act, focused particularly on the limiting language in section 425.13 and the legislative history of the amendment that added this restrictive text to the statute. The *Covenant Care* court's analysis is simply inapplicable to an interpretation of the broader statutory language contained in section 425.14, enacted at the same time section 425.13 was amended. (See *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689] [it is a

---

[4] The Governor signed Senate Bill No. 1420 (1987–1988 Reg. Sess.), the amendment to section 425.13, on September 22, 1988, and the bill was chaptered by the Secretary of State the same day. Senate Bill No. 1 (1987–1988 Reg. Sess.) was signed by the Governor on September 26, 1988, and chaptered the following day.

[5] The amendment to section 425.13 alone is not the only indication of the Legislature's deliberate intent to omit limiting language from section 425.14. Indeed, opponents of the legislation that ultimately became section 425.14, including the Department of Consumer Affairs, highlighted the enormous breadth of section 425.14, observing that, as written, section 425.14 would "unfairly" afford protections to religious organizations from unsubstantiated punitive damage claims while denying those protections to nonreligious entities engaged in the provision of identical community services. (See Dept. Consumer Affairs, Analysis of Sen. Bill No. 1 (1987–1988 Reg. Sess.) Sept. 19, 1988, p. 6.)

fundamental principle of precedent that "[l]anguage used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered"]; *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680 [36 Cal.Rptr.3d 495, 123 P.3d 931].)

Echoing observations made by the Supreme Court in *Covenant Care, supra,* 32 Cal.4th 771, Marin argues subjecting elder abuse plaintiffs to section 425.14's procedural requirements would undermine the legislative intent to foster such actions by providing litigants and attorneys with incentives to bring them. (See 32 Cal.4th at p. 787 [purpose of Elder Abuse Act is to " 'protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect' "; to further this purpose the Legislature has imposed heightened civil remedies for elder abuse claims, thereby " 'enabl[ing] interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults' "].) Because the Elder Abuse Act imposes its own protections against meritless punitive damage claims (see Welf. & Inst. Code, § 15657 [plaintiff seeking heightened civil remedies under Elder Abuse Act required to plead and prove by clear and convincing evidence "recklessness, oppression, fraud, or malice"]), Marin contends there is no danger a plaintiff can recover punitive damages on something other than proof of extreme and egregious conduct.

Contrary to Marin's argument, section 425.14's threshold pleading requirement neither restricts the heightened penalties authorized under the Elder Abuse Act nor increases the plaintiff's burden of proof. It simply mandates a prima facie showing of merit supporting allegations of recklessness, oppression or fraud earlier in the proceedings, rather than later. Nothing in the application of section 425.14 to religious health care providers in elder abuse actions dilutes the purpose of providing heightened civil penalties to litigants and their attorneys prosecuting legitimate elder abuse claims.

In sum, religious health care providers, like any other religious organization, may invoke section 425.14 to require a plaintiff to substantiate a punitive damage claim before that claim may be brought, even if the claim is not subject to section 425.13. We recognize our holding necessarily means a religious health care provider has greater protection from unsubstantiated punitive damage claims than afforded secular health care providers. Whatever the merits of that differentiation between religious not-for-profit entities and their secular counterparts, that is precisely what the Legislature intended.[6]

---

[6] In *Rowe v. Superior Court, supra,* 15 Cal.App.4th 1711, Division Three of this court held section 425.14 was constitutional, rejecting arguments that it invades a plaintiff's right to a jury

## DISPOSITION

The petition is granted. A peremptory writ of mandate shall issue directing respondent superior court to vacate its order of October 11, 2007, denying Little Company of Mary's motion to strike the punitive damage claim on the ground section 425.14 is not applicable in this elder abuse action and to conduct further proceedings not inconsistent with this opinion.

Little Company of Mary is to recover its costs in this proceeding.

Woods, J., and Zelon, J., concurred.

---

trial and violates the establishment clause of the First Amendment to the United States Constitution. Marin does not question the constitutionality of section 425.14; accordingly, we do not consider that issue.