[No. E025228. Fourth Dist., Div. Two. Apr. 4, 2000.]

COMMUNITY CARE AND REHABILITATION CENTER, Petitioner, v. THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent; RUDOLPH W. DEGROOD et al., Real Parties in Interest.

**COUNSEL**

Bonne, Bridges, Mueller, O'Keefe & Nichols, George E. Nowotny and Melissa W. Woo for Petitioner.

McCann & Carroll and C. Daniel Carroll for Astoria Convalescent Hospital as Amicus Curiae on behalf of Petitioner

No appearance for Respondent.

Robinson, Calcagnie & Robinson, Allan F. Davis and Sharon J. Arkin for Real Parties in Interest.

**OPINION**

**WARD, J.**—When an action for wrongful death is grounded upon the alleged malpractice of the health care provider, the action is subject to the rules pertaining to punitive damages in medical malpractice cases. (See Code Civ. Proc. § 425.13.) ▮ We conclude that is the case, even when the wrongful death action is couched in terms of elder abuse. The trial court therefore erred in allowing the real parties in interest to allege a claim for punitive damages without requiring them to comply with the required procedures under Code of Civil Procedure section 425.13.

### STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Emma DeGrood (decedent) underwent hip replacement surgery at Riverside Community Hospital. After surgery she was transferred to petitioner

Community Care and Rehabilitation Center (CCRC) to convalesce. Allegedly, as a result of acts and omissions of CCRC, decedent died. Rudolph W. DeGrood is decedent's surviving spouse and Philip W. DeGrood, Andrew DeGrood, Charles DeGrood, Mark DeGrood, Steve DeGrood, Julie Nace and Christine Manley are her surviving children (all surviving family members, real parties in interest in this proceeding, will be referred to as DeGrood or the DeGroods).

The DeGroods filed suit against CCRC for wrongful death, including a claim for punitive damages. Rudolph DeGrood alleges that he has been appointed "guardian ad litem" for the decedent's estate, and sues in that capacity as well. The DeGroods' action contained nine causes of action, eight of which named CCRC as a defendant.[1] When CCRC demurred, the trial court sustained the demurrer without leave to amend to the fifth cause of action (based on violation of Penal Code section 368, criminal abuse of an elder or a dependent adult), and with leave to amend to the sixth (unfair business practices), seventh (negligent infliction of emotional distress) and ninth (concealment) causes of action. The status of these causes of action is not clear, but the definitely operative causes of action against CCRC allege negligence (first), willful misconduct (third), intentional infliction of emotional distress (fourth), and fraud (eighth). Concurrently with its demurrer, CCRC moved to strike the claims for punitive damages attached to the third, fourth, and eighth causes of action.[2] The trial court denied the motion.

CCRC petitioned for a writ of mandate ordering respondent superior court to grant CCRC's motion to strike, based on its contention that Code of Civil Procedure section 425.13 applies in this case.[3] As previously indicated, we conclude that the trial court erred and, accordingly, we grant the petition.

## ANALYSIS

The DeGroods' action would clearly be subject to Code of Civil Procedure section 425.13, had not the California Supreme Court recently construed a provision in the Elder Abuse and Dependent Adult Civil Protection

---

[1]The second cause of action names only defendants Kane and Junkert, apparently decedent's doctors.

[2]The fourth cause of action does not expressly include a request for punitive damages. However, it does include repeated allegations of malice, evil intent, and despicable conduct. (See Civ. Code, § 3294.) We assume, as did CCRC, that the DeGroods intended to seek punitive damages based on this cause of action.

[3]The DeGroods argue that CCRC has an adequate remedy at law in the form of an appeal from any eventual judgment, and that extraordinary relief is therefore not appropriate. Our issuance of an order to show cause constituted an effective determination that the remedy at law was *not* adequate, and we do not revisit the issue. (*Robbins v. Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695].)

Act (the Elder Abuse Act for convenience; Welf. & Inst. Code, § 15600 et seq.), in a manner which appears to favor the DeGroods' position.

## I. *Code of Civil Procedure Section 425.13 on Its Face Applies to This Action*

■ Code of Civil Procedure section 425.13 imposes procedural requirements on a party claiming punitive damages in a medical malpractice action. The general rule is that, "[i]n any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint . . . ." In order to avoid this prohibition, a plaintiff in such an action must file a motion, usually accompanied by affidavits or other evidentiary material,[4] showing a "substantial probability" of prevailing on the punitive damages claims. Believing that meritless claims were commonly included in such actions, sometimes for tactical reasons,[5] the Legislature enacted a protection for medical professionals.[6] (*Central Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181, 189-191 [10 Cal.Rptr.2d 208, 832 P.2d 924]; *College Hospital Inc. v. Superior Court, supra,* 8 Cal.4th at p. 717.)

In order to carry out this purpose, the Supreme Court in *Central Pathology* construed the statute to apply "*whenever* an injured party seeks punitive damages for an injury that is *directly* related to the professional services provided by a health care provider acting in its capacity as such . . . ." (3 Cal.4th at p. 191, italics added.) Thus, although Code of Civil Procedure section 425.13 on its face applies only to actions involving "negligence,"[7] its procedures must be followed even if the plaintiff alleges an intentional wrong such as fraud (*Central Pathology*) or sexual battery. (*Cooper v. Superior Court* (1997) 56 Cal.App.4th 744, 751-752 [65 Cal.Rptr.2d 674].)

---

[4]The statute contemplates that the court will decide the issue "on the basis of the supporting and opposing affidavits . . . ." (Code Civ. Proc., § 425.13.) However, it is commonplace for the showings for and against the motion to include other evidence, such as excerpts from depositions. (See, e.g., *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 711 at fn. 3 [34 Cal.Rptr.2d 898, 882 P.2d 894] [depositions submitted by both sides]; *Aquino v. Superior Court* (1993) 21 Cal.App.4th 847, 859 [26 Cal.Rptr.2d 477] [depositions].)

[5]As a rule, punitive damages are not covered by malpractice or liability insurance. (Ins. Code, § 533.) Thus, such a demand puts a defendant's personal assets at risk. A plaintiff might also use the mere pleading of such a claim for publicity purposes.

[6]Code of Civil Procedure section 425.13 is clearly conceptually related to the statutes enacted as part of the Medical Injury Compensation Reform Act of 1975 (MICRA), *post.*

[7]*Central Pathology* also serves to clarify ambiguities arising from Code of Civil Procedure section 425.13. Obviously, if an action, as pleaded, involved only "negligence" as the term is normally understood—professional negligence of a health care provider—no claim for punitive damages would ever lie.

The DeGroods allege that decedent went to CCRC's facility for medical and nursing care during a period of convalescence following surgery. Among the wrongful acts or omissions with which CCRC is charged are the "fail[ure] to properly and timely assess decedent's medical condition and develop a care plan," "fail[ure] to carefully and properly examine, diagnose, evaluate, test, and properly react to, emergent conditions, including a severe infection," "fail[ure] to carefully and properly prescribe, administer, [and] regulate . . . medications," the failure to "properly . . . treat decedent," and the failure to "carefully and properly provide appropriate, prudent, and timely medical care and treatment for decedent." However it may be framed, in sum and substance the DeGroods assert that CCRC was remiss in providing health care services. It is therefore clear that, *absent any contradictory or superseding statutory enactment*, Code of Civil Procedure section 425.13 would apply to this action.

## II. *The Elder Abuse Act*

The DeGroods maintain that this is not a traditional medical malpractice action, but is based upon wrongs done to decedent in violation of the Elder Abuse Act which, in general, defines and prohibits abuse and neglect of persons falling within its scope.

The purpose of the Elder Abuse Act is set out in Welfare and Institutions Code section 15600. The statute recognizes the special vulnerability of the elderly and those who are either disabled or for some other reason dependent upon others for their personal or financial care. The Elder Abuse Act also recognizes that such persons are in need of special governmental protection and assistance. (See also *Delaney v. Baker* (1999) 20 Cal.4th 23, 33 [82 Cal.Rptr.2d 610, 971 P.2d 986].) Subdivision (j) of section 15600 explains that article 8.5 of the Elder Abuse Act, commencing with section 15657, was enacted to facilitate and encourage the prosecution of civil actions by or on behalf of abused or neglected elderly or dependent persons.

Welfare and Institutions Code section 15657, subdivision (a) provides for an additional remedy, not available in other tort actions, in an action brought under the Elder Abuse Act: if the defendant is found to have "been guilty of recklessness, oppression, fraud, or malice," the plaintiff must be awarded not only costs, but attorney fees. Furthermore, subdivision (b) of that section, in essence, provides that in a wrongful death action involving an elderly or dependent adult, the ban on pain and suffering damages contained in Code of Civil Procedure section 377.34 does not apply. There is, therefore, a considerable incentive for bringing a personal injury or wrongful death action in terms which qualify it under the Elder Abuse Act.

Crucial to this case is Welfare and Institutions Code section 15657.2, which provides: "Notwithstanding this article, any cause of action for injury or damage against a health care provider, as defined in Section 340.5 of the Code of Civil Procedure, based on the health care provider's alleged professional negligence, shall be governed by those laws which specifically apply to those professional negligence causes of action." In other words, although the Elder Abuse Act allows an abused elderly or dependent adult to recover enhanced damages under Welfare and Institutions Code section 15657, actions that revolve around the professional negligence of a health care provider are *not* subject to the more generous provisions of the Elder Abuse Act, but remain subject to laws previously held to cover such cases. Chief among these are the laws commonly known as MICRA,[8] although the court in *Delaney v. Baker, supra,* 20 Cal.4th at page 29, found that Welfare and Institutions Code section 15657.2 encompassed not only such medical-malpractice-specific statutes, but also other rules generally applicable to civil actions. In any event, Code of Civil Procedure section 425.13, which does apply specifically to medical malpractice actions, clearly falls into the category of statutes described in Welfare and Institutions Code section 15657.2.

The uncertainty arises from the reference in Welfare and Institutions Code section 15657.2 to actions based on "professional *negligence*" (italics added), even though the focus of the Elder Abuse Act is on cases involving recklessness at a minimum and malice at the worst. If an action is brought with reference to the Elder Abuse Act, is based on medical services, *and* alleges reckless or intentional actions by the defendant, does Welfare and Institutions Code section 15657.2 apply to bring in the procedural protections of MICRA and laws of general applicability relating to damages? Or is the scope of Welfare and Institutions Code section 15657.2 limited to "true" negligence actions, so that actions based on the provision of medical professional services which allege intentional or willful misconduct are *not* subject to the limitations of other laws?

The DeGroods rely on *Delaney v. Baker, supra,* 20 Cal.4th 23, in which the California Supreme Court addressed the term "professional negligence" in Welfare and Institutions Code section 15657.2 in light of the expansive construction that it had given to the term in *Central Pathology Service Medical Clinic, Inc. v. Superior Court, supra,* 3 Cal.4th 181. In *Delaney,* the defendant argued that, in accordance with *Central Pathology,* the Legislature's use of the term "professional negligence" in Welfare and Institutions

---

[8]MICRA comprises several provisions favorable to defendants including procedural requirements, limitations on damages, and procedures permitting periodic payments of judgments. (See, e.g., Code Civ. Proc., §§ 364 & 667.7; Civ. Code, §§ 3333.1 & 3333.2.)

Code section 15657.2 meant that *any* action against a health care provider, if *directly related* to the professional services provided by a health care provider acting in its capacity as such, was to be governed by the usual medical malpractice litigation and recovery rules, and the defendant in such a case was *not* subject to the enhanced recoveries available under Welfare and Institutions Code section 15657.

The Supreme Court clearly recognized that accepting the defendant's proposed construction would mean that elderly or dependent adults who were harmed by the acts or omissions of health care providers could virtually never recover the enhanced damages or attorney fees contemplated by Welfare and Institutions Code section 15657. As *Central Pathology* held that "professional negligence" *in the context there considered* included *any and all* theories of recovery which stemmed from health care services, the same construction, if given to the term in section 15657.2, would eliminate an entire class of cases and defendants from the scope of the Elderly Abuse Act. (See *Delaney v. Baker, supra,* 20 Cal.4th at pp. 30-31.) Because the legislative history indicated that abuse and neglect suffered by elderly or dependent adults in nursing homes was a major concern of the Elderly Abuse Act (see *id.* at pp. 36-37), the court concluded such a construction was obviously inappropriate.

Instead, the court held that Welfare and Institutions Code section 15657.2 "mak[es] clear that the acts proscribed by section 15657 do not include acts of simple professional negligence, but refer to forms of abuse or neglect performed with some state of culpability greater than mere negligence." (*Delaney v. Baker, supra,* 20 Cal.4th at p. 32.) Therefore, if acts qualifying as abuse or neglect were committed by health care providers with recklessness or malice, the enhanced recovery provided by the Elder Abuse Act would apply.

Thus, we have a situation in which the term "professional negligence" in Code of Civil Procedure section 425.13 means *any* type of malfeasance or nonfeasance, whether inadvertent, intentional, or malicious; but in the Elder Abuse Act provision, "professional negligence," at least for the purpose of the *Delaney* analysis, means conduct that is careless or accidental, but goes no farther on the scale of reprehensibility.

III. *Code of Civil Procedure Section 425.13*
*Applies to the Elder Abuse Act*

In deciding the issue before us, we must first " 'ascertain the intent of the Legislature so as to effectuate the purpose of the law. . . . Where

uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.]' " (*Walnut Creek Manor v. Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268 [284 Cal.Rptr. 718, 814 P.2d 704].)

■ When the Legislature has employed the same word or term more than once in a statute, there is a general presumption that the word or term means the same thing each time it is used. (*People v. Dillon* (1983) 34 Cal.3d 441, 468 [194 Cal.Rptr. 390, 668 P.2d 697]; *Braun v. Bureau of State Audits* (1998) 67 Cal.App.4th 1382, 1389 [79 Cal.Rptr.2d 791].) On the other hand, the same term used in different statutes may have a variety of meanings, and context is of paramount importance. (*College Hospital Inc. v. Superior Court, supra,* 8 Cal.4th 704, 716.) In construing a statute, however, the primary goal is to effectuate the intent of the Legislature. (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1245 [82 Cal.Rptr.2d 85, 970 P.2d 872].) ■ Even plain language in a statute will not be slavishly given its apparent effect if to do so would frustrate the legislative intent, ascertained from a review of the entire statutory scheme. (*Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1064-1065 [77 Cal.Rptr.2d 202, 959 P.2d 360].) ■ Finally, when a statute is susceptible of two constructions, that one which would raise serious constitutional issues should be avoided. (*F & L Farm Co. v. City Council* (1998) 65 Cal.App.4th 1345, 1353 [77 Cal.Rptr.2d 360].)

■ Applying these precepts insofar as it is possible to do so, and giving paramount importance to our duties both to carry out the intent of the Legislature and to avoid potential constitutional difficulties, we reach the somewhat remarkable conclusion that a specific phrase in a single statute may mean two different things, depending on the context.

The DeGroods argue that the Supreme Court has settled the question in *Delaney* by holding that "professional negligence" in Welfare and Institutions Code section 15657.2 is to be narrowly construed, so that the usual statutory rules governing malpractice actions do not apply if a complaint alleges reckless or malicious misconduct. However, we do not find *Delaney* controlling because that court was not asked to determine whether the Elder Abuse Act "trumps" Code of Civil Procedure section 425.13. *Delaney* only defined the circumstances in which plaintiffs could recover the additional damages provided by Welfare and Institutions Code section 15657. We are faced with quite a different question: whether a more general provision of law (Code Civ. Proc., § 425.13) continues to apply to an action pleaded under the Elder Abuse Act in terms of malicious and intentional wrongdoing.

We will assume that, pursuant to *Delaney*, if the DeGroods can establish conduct by CCRC which falls under the statutory definitions of abuse or neglect contained in the Elder Abuse Act, damages pursuant to Welfare and Institutions Code section 15657 will be recoverable. However, we are here concerned with a type of damages, punitive damages, which is available in many kinds of cases, not limited to abused elder or dependent adults, upon proof of a defendant's egregious conduct. Punitive damages are a potential element of recovery in virtually any tort action in which the plaintiff can prove conduct falling under the definitions contained in Civil Code section 3294. *Delaney* did not purport to overrule *Central Pathology Service Medical Clinic, Inc. v. Superior Court, supra,* 3 Cal.4th 181, which therefore remains presumptively the law with respect to Code of Civil Procedure section 425.13. Indeed, under the construction given the term "professional negligence" in *Delaney*, Welfare and Institutions Code section 15657.2 has no effect with respect to Code of Civil Procedure section 425.13, because the latter section does not come into play when "mere" negligence is the sole wrong alleged.

Furthermore, we stress that Code of Civil Procedure section 425.13 does not *prohibit* the recovery of punitive damages against a health care provider. It only establishes procedures designed to ensure that a claim for such damages is not made without foundation. Thus, applying Code of Civil Procedure section 425.13 does not mean that the Elderly Abuse Act plaintiff will lose a valuable right; it merely means that punitive damages cannot be demanded in bad faith or as a tactical ploy designed to coerce a hasty settlement.

In response to a perceived crisis relating to doctors' ability to obtain malpractice insurance at economically feasible rates (*Delaney v. Baker, supra,* 20 Cal.4th at p. 34, citing *American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 363 at fn. 1 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233]), the Legislature enacted MICRA and, later, Code of Civil Procedure section 425.13. The latter statute reflects a particular legislative desire that health care providers not be subject to unsubstantiated claims for punitive damages.

In *Central Pathology Service Medical Clinic, Inc. v. Superior Court, supra,* 3 Cal.4th 181, the court explained that it was adopting a broad construction of the term " 'arising out of the professional negligence of a health care provider' " to prevent "artful pleading" from circumventing the statutory

purpose.[9] (*Central Pathology* at p. 191.) We believe that it would be similarly anomalous for health care providers to be subjected to possibly meritless, strategic demands for punitive damages in cases brought by persons described in the Elder Abuse Act, simply by "artfully pleading" the claim in terms of elder or dependent adult abuse or neglect rather than medical malpractice. Rather, the requirements of Code of Civil Procedure section 425.13 should be followed whenever the gravamen of an action is *professional* malfeasance—that is, malfeasance in the provision of health care services.

This result does not negate or neutralize Welfare and Institutions Code section 15657.2, because that statute, which begins with a specific reference to the enhanced damages provided by article 8.5 of the Elder Abuse Act, is clearly primarily concerned with that issue. Furthermore, a construction that exempted actions brought by elderly and dependent adults from the requirements of Code of Civil Procedure section 425.13 would have constitutional implications. No reason is readily apparent why such persons should receive more favorable treatment with respect to punitive damages than other injured persons bringing suit against health care providers. There is no reason to suppose that the elderly and dependent (or their representatives) are less likely to bring *unsubstantiated* claims for punitive damages than other plaintiffs. Given the strong legislative concerns over the potential abuse of such claims (*ante,* fn. 7) we are reluctant to open the door in this respect.

Under our analysis, both of the relevant legislative policies are satisfied and neither is offended. As we have noted above, applying Code of Civil Procedure section 425.13 to the DeGroods' case here does not mean that they cannot, or will not, recover punitive damages against CCRC. Nor does it affect in any way their specific Elder Abuse Act remedies, because they *have* sufficiently pleaded conduct which, under *Delaney,* triggers Welfare and Institutions Code section 15657 even in the context of professional medical malfeasance. On the other hand, CCRC is protected against *baseless* claims for punitive damages.

We recognize, of course, that this result essentially means that the term "professional negligence" not only means something different in Code of Civil Procedure section 425.13 and Welfare and Institutions Code section 15657.2; it means different things in the latter section alone, depending on

---

[9]If Code of Civil Procedure section 425.13 did not apply to claims based on intentional torts, a party whose basic claim was for medical malpractice would be able to include a demand for punitive damages simply by including a cause of action for fraud or battery, for example—no matter how meritless. *Central Pathology* ensured that Code of Civil Procedure section 425.13 would apply to all health care related claims, however pleaded or framed.

context. But the whole point of *Delaney* is that context is everything, and we do not believe either that the Legislature intended to preclude the application of Code of Civil Procedure section 425.13 to the Elder Abuse Act, or that the Supreme Court, if it had been directly faced with the question, would have so held.

### DISPOSITION

Let a peremptory writ of mandate issue, directing respondent court to vacate its order denying petitioner's motion to strike and to enter a new order granting said motion. Petitioner shall recover costs on appeal.

Richli, Acting P. J., and Gaut, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied June 28, 2000. Kennard, J., was of the opinion that the petition should be granted.